1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   WILLIE E. BRADLEY,                          No.  2:22-cv-0197 KJM DB P

12                    Petitioner,

13        v.                                     FINDINGS AND RECOMMENDATIONS

14   BRIAN KIBLER,

15                    Respondent.

16

17        Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for a

18   writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner challenges his conviction imposed by

19   the Solano County Superior Court in 2019 for first degree felony murder.  Petitioner alleges his

20   due process rights were violated because: (1) there was insufficient evidence to support the jury's

21   finding that he acted with "reckless indifference to human life," and (2) the trial court refused to

22   instruct the jury on attempted robbery as a lesser included offense of felony murder.  For the

23   reasons set forth below, this court will recommend the petition be denied.

                                     **BACKGROUND**

24

25   **I.  Facts Established at Trial**

26        The California Court of Appeal for the First Appellate District provided the following

27   factual summary:

28   ////

                                            1

Defendants[1] and at least one other individual, Daniel Glass, attempted to rob L.V. and her cousin, Robby Poblete, while they were waiting in their vehicle to purchase marijuana. During the course of that robbery, Poblete was shot and killed.

Defendants were initially charged by information with murder (Pen. Code,1 § 187, subd. (a); count 1) and attempted second degree robbery (§§ 664, 211; count 2). Defendant Mason also was charged by information with assault by means likely to produce great bodily injury (§ 245, subd. (a)(4); count 3). The information alleged felony-murder special circumstance allegations (§ 190.2, subd. (a)(l7)) and personal gun use allegations (§§ 12022.5, subd. (a); 12022.53, subd. (b)). While Glass was charged in the initial felony complaint, he reached a plea deal with the prosecution and was not charged in the information.

During defendants' initial trial, the California Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), which amended the felony-murder rule and the natural and probable consequences doctrine, as it relates to murder. (*People v. Cooper* (2020) 54 Cal.App.5th 106, 113, *review granted* Nov. 10, 2020, S264684.) The bill, in relevant part, amended section 189 to provide that a defendant who was not the actual killer and did not have an intent to kill is not liable for felony murder unless he or she "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e)(3).)

In part due to anticipation of Senate Bill 1437, the district attorney filed an amended information recharging defendants with murder, but removing all reference to the attempted robbery. After passage of Senate Bill 1437, defendants moved for mistrial because "the trial related proceedings to date have proceeded on the basis of a 'felony-murder' rule that is no longer valid." The court granted defendants' motion for mistrial.

Glass testified at trial against defendants. On the day of the shooting, Glass testified, he saw defendants while stopped at a gas station. Glass and defendants were on friendly terms and would "chill" together. Glass asked defendants if they wanted to ride with him, and they agreed. While driving, Glass received a call on his cell phone from Gover. Gover asked Glass if he was interested in robbing someone for money. Glass put his phone on speaker and asked for more details. Gover informed them a man and woman would be in a truck at a Howard Johnson Inn, and they may be able to steal approximately $18,000. Both defendants indicated to Glass they wanted to proceed with the robbery, and Glass drove toward the Howard Johnson Inn. He parked in the Grocery Outlet parking lot, which is adjacent to the Howard Johnson Inn. All three individuals had firearms.

Defendants and Glass did not discuss the robbery until they arrived at the hotel. Upon arriving, Glass testified, defendant Bradley told

---

[1] Petitioner was tried jointly with co-defendant Mason.

him to go to the passenger side door, and defendants would go to the driver's side door. As Glass and defendants walked through the hotel, Glass separated from defendants. Glass testified he walked past the truck, lingered by an open conference room door, and then walked to the passenger side of the truck. Glass stated he saw defendants walking toward the truck, and he asked L.V., who was sitting in the passenger seat of the truck, for a lighter. Glass testified he then pulled out his gun and pointed it at L.V.'s chest and face. She screamed, and he told her to be quiet and not look at him.

Glass testified defendants had, by then, approached the driver's side door with their guns drawn. They repeatedly instructed Poblete to raise his hands, but he only raised one hand. Glass observed Poblete moving his right hand around by his lap. Glass then saw Poblete standing outside the truck with the door open and heard subsequent gunshots. After hearing the gunshots, Glass testified he crouched down and ran back to his vehicle. He saw defendants running in front of him. When a man attempted to stop them, defendant Mason shoved the man out of the way, and they continued to Glass's vehicle and left the scene. When Glass asked defendants what had happened, defendant Bradley replied that Poblete "had a gun."

L.V. also testified regarding the attempted robbery. She stated Poblete encouraged her to purchase marijuana from his "really good friend" because the friend could offer a better price than a dispensary. L.V. agreed, and they drove to and parked in the Howard Johnson Inn parking lot facing the swimming pool. After they parked, Poblete removed his gun from the center console of his vehicle and placed it under his thigh. Approximately 20 minutes later, L.V. noticed a group of young men in the parking lot. She believed it was either four or five individuals. One of the men approached her side of the vehicle and asked if she had a lighter. She testified that when she responded affirmatively, he called over the other men. L.V. stated the first individual then put a gun to her chest and stated, "Don't fucking move." She testified she looked down and did not move apart from glancing slightly toward Poblete. She also believed another individual approached her side of the vehicle from behind, outside of her line of vision, and pointed a gun at her head.

L.V. testified she saw Poblete attempting to grab his gun. At that same time, at least two men approached the driver's side of the vehicle. Because she did not move after the gun was pointed at her, L.V. was unsure of how the individuals approached the driver's side but believed they went around the back of the truck. She testified those individuals then opened the driver's side door while yelling at Poblete and holding guns. She stated they started dragging Poblete out of the truck, someone yelled "[s]top, stop," and shortly thereafter she heard three gunshots. The men then fled from the scene. She called 911.

Officers responded to L.V.'s 911 call and found Poblete on the ground suffering gunshot wounds. To the left of Poblete's left hand, officers located a small handgun. Police were able to identify Glass and defendants from surveillance video from the hotel. However, no surveillance video captured the actual shooting.

3

1
2
3

> A jury convicted defendants of felony murder and found defendant Mason guilty of assault by means likely to produce great bodily injury. The court sentenced defendants to 25 years to life. It also imposed an additional eight years on defendant Mason for his assault conviction and the great bodily injury enhancement.

4   People v. Bradley, 65 Cal.App.5th 1022, 1026-28 (2021).

5   **II. Procedural Background**

6       **A. Judgment and Sentencing**

7   On April 15, 2019, a jury convicted petitioner of first degree felony murder. (ECF No.

8   19-2 at 266.[2])  On November 5, 2019, the court sentenced him to an indeterminate term of 25

9   years to life. (ECF No. 19-3 at 91-92.)

10       **B. State Appeal and Federal Proceedings**

11   On June 24, 2021, the California Court of Appeal affirmed the judgment in a published

12   opinion. People v. Bradley, 65 Cal. App. 5th 1022 (2021).  The California Supreme Court

13   summarily denied petitioner's petition for review on September 15, 2021.  (ECF No. 19-8.)

14   On March 2, 2022, petitioner filed the present habeas corpus petition in this court raising

15   two exhausted claims.[3]  (ECF No. 1.)  Respondent filed an answer (ECF No. 17) and petitioner

16   filed a traverse (ECF No. 24).

17       **STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS**

18   An application for a writ of habeas corpus by a person in custody under a judgment of a

19   state court can be granted only for violations of the Constitution or laws of the United States.  28

20   U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

21   application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502

22   U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

23   Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

24   corpus relief:

25
26   [2] Respondent lodged the state court record.  (See ECF No. 19.)  Herein, this court cites to the electronic filing numbers and pagination.

27   [3] In addition to the pro se pleadings filed in federal court, this court considers the arguments made in petitioner's state court appellate briefs (ECF Nos. 19-22, 19-24) and his petition for review (ECF No. 19-26) to the California Supreme Court.
28

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "'may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably.'" Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 567 U.S. 37 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id. at 64. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams, 529 U.S. at 405-06). "Under the 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003)

5

1   (quoting Williams, 529 U.S. at 413); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  "[A]

2   federal habeas court may not issue the writ simply because that court concludes in its independent

3   judgment that the relevant state-court decision applied clearly established federal law erroneously

4   or incorrectly.  Rather, that application must also be unreasonable."  Williams, 529 U.S. at 411;

5   see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Andrade, 538 U.S. at 75 ("It is not

6   enough that a federal habeas court, in its independent review of the legal question, is left with a

7   firm conviction that the state court was erroneous." (Internal citations and quotation marks

8   omitted.)).  "A state court's determination that a claim lacks merit precludes federal habeas relief

9   so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

10  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652,

11  664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a

12  state prisoner must show that the state court's ruling on the claim being presented in federal court

13  was so lacking in justification that there was an error well understood and comprehended in

14  existing law beyond any possibility for fairminded disagreement."  Richter, 562 U.S. at 103.

15        There are two ways a petitioner may satisfy subsection (d)(2).  Hibbler v. Benedetti, 693

16  F.3d 1140, 1146 (9th Cir. 2012).  He may show the state court's findings of fact "were not

17  supported by substantial evidence in the state court record" or he may "challenge the fact-finding

18  process itself on the ground it was deficient in some material way."  Id. (citing Taylor v. Maddox,

19  366 F.3d 992, 999-1001 (9th Cir. 2004), abrogated by Murray v. Schriro, 745 F.3d 999-1000 (9th

20  Cir. 2014)[4]); see also Hurles v. Ryan, 752 F.3d 768, 790-91 (9th Cir. 2014) (If a state court makes

21  factual findings without an opportunity for the petitioner to present evidence, the fact-finding

22  process may be deficient and the state court opinion may not be entitled to deference.).  Under the

23  ─────────────

24  [4] In Kipp v. Davis, 971 F.3d 939, 953 n.13 (9th Cir. 2020), the Court of Appeals explained the
    effect of the decision in Murray on Taylor:

25        In Murray I, we recognized that Pinholster foreclosed Taylor's suggestion that an
          extrinsic challenge, based on evidence presented for the first time in federal court, may
26        occur once the state court's factual findings survive any intrinsic challenge under section
          2254(d)(2). Murray I, 745 F.3d at 999–1000. Kipp does not present an extrinsic challenge
27        so Murray I's abrogation of Taylor on this ground is irrelevant here.

    Similarly, in the present case, there is no extrinsic challenge based on evidence presented for the
28  first time in federal court, so Murray's limitation of Taylor is not relevant.

1    "substantial evidence" test, the court asks whether "an appellate panel, applying the normal

2    standards of appellate review," could reasonably conclude that the finding is supported by the

3    record.  Hibbler, 693 F.3d at 1146.

4          The second test, whether the state court's fact-finding process is insufficient, requires the

5    federal court to "be satisfied that any appellate court to whom the defect [in the state court's fact-

6    finding process] is pointed out would be unreasonable in holding that the state court's fact-finding

7    process was adequate."  Hibbler, 693 F.3d at 1146-47 (quoting Lambert v. Blodgett, 393 F.3d

8    943, 972 (9th Cir. 2004)).  The state court's failure to hold an evidentiary hearing does not

9    automatically render its fact finding process unreasonable.  Id. at 1147.  Further, a state court may

10   make factual findings without an evidentiary hearing if "the record conclusively establishes a fact

11   or where petitioner's factual allegations are entirely without credibility."  Perez v. Rosario, 459

12   F.3d 943, 951 (9th Cir. 2006) (citing Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003)).

13         The court looks to the last reasoned state court decision as the basis for the state court

14   judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

15   "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from

16   a previous state court decision, [this court] may consider both decisions to 'fully ascertain the

17   reasoning of the last decision.'"  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

18   banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)).  "When a federal claim

19   has been presented to a state court and the state court has denied relief, it may be presumed that

20   the state court adjudicated the claim on the merits in the absence of any indication or state-law

21   procedural principles to the contrary."  Richter, 562 U.S. at 99.  This presumption may be

22   overcome by showing "there is reason to think some other explanation for the state court's

23   decision is more likely."  Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

24   Similarly, when a state court decision on a petitioner's claims rejects some claims but does not

25   expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that

26   the federal claim was adjudicated on the merits.  Johnson v. Williams, 568 U.S. 289, 293 (2013).

27   When it is clear, that a state court has not reached the merits of a petitioner's claim, the

28   deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court

1    must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099,

2    1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

3        If a petitioner overcomes one of the hurdles posed by section 2254(d), the federal court

4    reviews the merits of the claim de novo.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir.

5    2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear

6    both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is

7    such error, we must decide the habeas petition by considering de novo the constitutional issues

8    raised.").  For the claims upon which petitioner seeks to present evidence, petitioner must meet

9    the standards of 28 U.S.C. § 2254(e)(2) by showing that he has not "failed to develop the factual

10   basis of [the] claim in State court proceedings" and by meeting the federal case law standards for

11   the presentation of evidence in a federal habeas proceeding.  See Cullen v. Pinholster, 563 U.S.

12   170, 186 (2011).

## ANALYSIS

14       Petitioner contends his due process rights were violated because he was convicted on

15   insufficient evidence of intent and because the trial court refused to instruct the jury that

16   attempted robbery was a lesser included offense of felony murder.

17   **I.  Sufficiency of the Evidence of Intent**

18       Petitioner argues the evidence did not show he had sufficient intent – reckless indifference

19   to human life – for a felony murder conviction.  Rather, it showed that he intended only a robbery

20   and could not anticipate that the situation would become violent.  (See Pet., ECF No. 1 at 10-15;

21   Pet. for Review, ECF No. 19-26 at 32-39.)

22       **A.  Decision of the State Court**

23           The prosecution did not attempt to prove either defendant was the
             actual killer. Accordingly, defendants first argue the prosecution was
24           required to show they acted with reckless indifference to human life
             to support a felony-murder conviction.[n.4]  They contend
25           insufficient evidence supports such a finding. We disagree.

26           *1. Standard of Review*

27           "In evaluating a claim regarding the sufficiency of the evidence, we
             review the record 'in the light most favorable to the judgment below
28           to determine whether it discloses substantial evidence—that is,

evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Westerfield* (2019) 6 Cal.5th 632, 712, 243 Cal.Rptr.3d 18, 433 P.3d 914.) " 'To assess the evidence's sufficiency, we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime ... beyond a reasonable doubt.' " (*People v. Penunuri* (2018) 5 Cal.5th 126, 142, 233 Cal.Rptr.3d 324, 418 P.3d 263.)

" 'The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence.' [Citations.] 'We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also be reasonably reconciled with a contrary finding.' " (*People v. Westerfield, supra*, 6 Cal.5th at pp. 712–713, 243 Cal.Rptr.3d 18, 433 P.3d 914.)

*2. The Tison-Enmund [fn 5] Continuum*

The law governing liability for felony murder is crafted by both U.S. Supreme Court and California Supreme Court precedent. This court recently summarized the contours of the relevant law in *In re Taylor* (2019) 34 Cal.App.5th 543, 246 Cal.Rptr.3d 342 (*Taylor*): "Beginning with the principle that 'in capital cases above all, punishment must accord with individual culpability,' [*People v.*] *Banks* explained that the death penalty cannot be imposed based solely on a defendant's 'vicarious responsibility for the underlying crime.' ([*People v.*] *Banks* [(2015)] 61 Cal.4th [788,] 801 [189 Cal.Rptr.3d 208, 351 P.3d 330].) Rather, to be sentenced to death, a defendant must, compared to 'an ordinary aider and abettor to an ordinary felony murder,' have both a more culpable mind state—reckless indifference to the risk of death—and more substantial involvement—as a major participant. (*Id.* at pp. 801–802 [189 Cal.Rptr.3d 208, 351 P.3d 330].) Because the United States Supreme Court had 'found it unnecessary to "precisely delineate the particular types of conduct and states of mind warranting imposition of the death penalty," ' *Banks* concluded that 'a jury presented with this question must consider the totality of the circumstances.' (*Banks*, at p. 802 [189 Cal.Rptr.3d 208, 351 P.3d 330], quoting *Tison v. Arizona*, supra, 481 U.S. at p. 158 [107 S.Ct. 1676] (*Tison*).) Accordingly, *Banks* closely examined the facts in *Enmund* and *Tison* '[t]o gain a deeper understanding of the governing test and offer further guidance.' (*Banks*, at p. 801 [189 Cal.Rptr.3d 208, 351 P.3d 330].)

"In *Enmund*, the defendant learned that a man 'was in the habit of carrying large sums of cash on his person. A few weeks later, [the defendant] drove two armed confederates to [the man's] house and waited nearby while they entered. When [the man's] wife appeared with a gun, the confederates shot and killed [the couple]. [The defendant] thereafter drove his confederates away from the scene and helped dispose of the murder weapons, which were never found.' ([*People v.*] *Banks, supra*, 61 Cal.4th at p. 799 [189 Cal.Rptr.3d 208,

351 P.3d 330].) The United States Supreme Court reversed the death sentence, concluding that the Eighth Amendment barred such punishment 'for any felony-murder aider and abettor "who does not himself [or herself] kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." ' (*Banks*, at p. 799 [189 Cal.Rptr.3d 208, 351 P.3d 330].)

"In *Tison*, the defendants 'helped plan and carry out the escape of two convicted murderers from prison,' one of whom had killed a guard during a previous escape. ([*People v.*] *Banks, supra*, 61 Cal.4th at p. 802 [189 Cal.Rptr.3d 208, 351 P.3d 330].) 'This entailed [the defendants'] bringing a cache of weapons to prison, arming both murderers, and holding at gunpoint guards and visitors alike' (*Ibid.*) During the escape, the defendants robbed and held at gunpoint an innocent family 'while the two murderers deliberated whether the family should live or die' and the defendants 'then stood by' while the murderers shot all four family members. (*Ibid.*) The United States Supreme Court affirmed the death sentences, holding that ' "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement." ' (*Id.* at p. 800 [189 Cal.Rptr.3d 208, 351 P.3d 330].)

"Comparing the facts in *Enmund* with those in *Tison*, [*People v.*] *Banks* derived a nonexclusive list of factors bearing on whether an aider and abettor of felony murder was a 'major participant' under section 190.2[, subdivision] (d): [fn. 6] ' "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" ' ([*People v.*] *Clark* [(2016)] 63 Cal.4th [522,] 611 [203 Cal.Rptr.3d 407, 372 P.3d 811], quoting [*People v.*] *Banks, supra*, 61 Cal.4th at p. 803 [189 Cal.Rptr.3d 208, 351 P.3d 330].)

"Applying these factors, *Banks* held there was insufficient evidence that the defendant in the case before it was a major participant in the underlying robbery. ([*People v.*] *Banks, supra*, 61 Cal.4th at p. 805 [189 Cal.Rptr.3d 208, 351 P.3d 330].) The evidence showed that the defendant had 'dropped his confederates off near [a marijuana] dispensary' and 'waited three blocks away for approximately 45 minutes.' (*Id.* at pp. 795, 805 [189 Cal.Rptr.3d 208, 351 P.3d 330].) After a security guard attempted to stop the robbers, all of whom were armed, one of them shot and killed him. (*Id.* at p. 795 [189 Cal.Rptr.3d 208, 351 P.3d 330].) The defendant then headed toward the dispensary, picked up the other two nonshooters, and drove them away. (*Id.* at pp. 795–796, 805 [189 Cal.Rptr.3d 208, 351 P.3d 330].) Our state Supreme Court concluded that the defendant was 'at the *Enmund* pole of the *Tison-Enmund* spectrum,' as there was no evidence that he planned the robbery or procured weapons, knew the shooter had previously committed a violent crime, or was present at

10

the scene or even aware that a shooting had occurred. (*Id*. at p. 805 [189 Cal.Rptr.3d 208, 351 P.3d 330].) The court also concluded that the defendant had not exhibited reckless indifference to human life, emphasizing that a defendant's knowing participation in an armed robbery and subjective awareness of 'the risk of death inherent in [that crime]' does not suffice. (*Id*. at pp. 807–808 [189 Cal.Rptr.3d 208, 351 P.3d 330].) Rather, a defendant must appreciate that his or her 'own actions would involve a grave risk of death.' (*Id*. at p. 807 [189 Cal.Rptr.3d 208, 351 P.3d 330].)

"*Clark* expounded on the meaning of the 'reckless indifference to human life' element of a special circumstance under section 190.2[, subdivision] (d), which ' "significantly overlap[s]" ' with the 'major participant' element. ([*People v*.] *Clark, supra*, 63 Cal.4th at pp. 614–615 [203 Cal.Rptr.3d 407, 372 P.3d 811]; *see* [*In re*] *Bennett* [(2018)] 26 Cal.App.5th [1002,] 1015 [237 Cal.Rptr.3d 610].) *Clark* explained that the mind state 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his [or her] actions.' (*Clark*, at pp. 616–617 [203 Cal.Rptr.3d 407, 372 P.3d 811].) The required intent has 'both subjective and objective elements. The subjective element is the defendant's conscious disregard of risks known to him or her. But recklessness is not determined merely by reference to a defendant's subjective feeling that he or she is engaging in risky activities. Rather, recklessness is also determined by ... what "a law-abiding person would observe in the actor's situation." ' (*Id*. at p. 617 [203 Cal.Rptr.3d 407, 372 P.3d 811].) As [*People v*.] *Banks* did as to the 'major participant' element, *Clark* provided a nonexclusive list of factors bearing on the 'reckless indifference to human life' element. (*Clark*, at p. 618 [203 Cal.Rptr.3d 407, 372 P.3d 811].) These factors are the 'defendant's knowledge of weapons used in the crime, and their actual use and number; [the] defendant's proximity to the crime and opportunity to stop the killing or aid [the victim or victims]; the duration of the crime; [the] defendant's knowledge of [the actual killer's] propensity to kill; and [the] defendant's efforts to minimize the possibility of violence during the crime.' ([*In re*] *Miller* [(2017)] 14 Cal.App.5th [960,] 975 [222 Cal.Rptr.3d 691]; *see Clark*, at pp. 618–621 [203 Cal.Rptr.3d 407, 372 P.3d 811].)

"Applying these factors to the facts, *Clark* concluded there was insufficient evidence that the defendant had acted with reckless indifference to human life. ([*People v*.] *Clark, supra*, 63 Cal.4th at p. 623 [203 Cal.Rptr.3d 407, 372 P.3d 811].) As summarized by a later decision, the *Clark* defendant ' "was the mastermind who planned and organized [an] attempted robbery [of a computer store] and who was orchestrating the events at the scene of the crime." [Citation.] During the robbery, one of [the defendant's] accomplices ... shot and killed the mother of a store employee who arrived at the store to pick up her son. At the time of the shooting, [the defendant] was not at the store, but he drove to the location shortly thereafter and fled when he saw a woman lying on the ground, the police approaching, and [the shooter] fleeing the scene.' ([*In re*] *Bennett, supra*, 26 Cal.App.5th at pp. 1014–1015 [237 Cal.Rptr.3d 610], *quoting Clark*, at p. 612 [203 Cal.Rptr.3d 407, 372 P.3d 811].) Despite the evidence of the

defendant's significant involvement in planning the robbery, there was also evidence that he 'planned the crime with an eye to minimizing the possibilities for violence,' because it was timed for after the store closed and there were not supposed to be bullets in the gun. (*Clark*, at pp. 621–623 [203 Cal.Rptr.3d 407, 372 P.3d 811].) The court concluded that the special circumstance had to be vacated since 'nothing in the plan ... elevated the risk to human life beyond those risks inherent in any armed robbery.' (*Id.* at p. 622 [203 Cal.Rptr.3d 407, 372 P.3d 811].)" (*Taylor, supra*, 34 Cal.App.5th at pp. 551–554, 246 Cal.Rptr.3d 342.)

In *In re Scoggins* (2020) 9 Cal.5th 667, 264 Cal.Rptr.3d 804, 467 P.3d 198 (*Scoggins*), the California Supreme Court again reiterated the *Clark* [fn. 7] factors. As recently summarized by Division Five, in *Scoggins*, "the defendant believed he had been swindled by the victim and sought revenge by planning an unarmed beating, to be committed by several of the defendant's friends—who would also get the defendant's money back. Once the plan was set in motion, however, one of the defendant's friends pulled out a gun and shot the victim. The defendant had not been present because he feared the victim would recognize him. Instead, the defendant waited at a nearby gas station, where his view of the crime scene was blocked. He arrived at the scene after the shooting, checked to see if the victim was breathing, and cooperated with police." (*In re McDowell* (2020) 55 Cal.App.5th 999, 1010, 269 Cal.Rptr.3d 872, *citing Scoggins*, at pp. 671–672, 678–679, 264 Cal.Rptr.3d 804, 467 P.3d 198.) In assessing whether the defendant acted with reckless indifference, the *Scoggins* court reaffirmed the *Clark* factors and explained determining culpability "requires a fact-intensive, individualized inquiry." (*Scoggins*, at pp. 677, 683, 264 Cal.Rptr.3d 804, 467 P.3d 198.) The court concluded the defendant had not acted with reckless indifference, noting the defendant was not present during the incident, his plan did not involve the use of weapons, the duration of the interaction was brief, the record was devoid of evidence suggesting the defendant knew his friends were likely to use lethal force, and the defendant took steps to minimize the risk of injury by planning a public unarmed assault. (*Id.* at pp. 671, 680–681, 683, 264 Cal.Rptr.3d 804, 467 P.3d 198.)

*3. Analysis*

Defendants argue insufficient evidence demonstrates they acted with reckless indifference to human life during the attempted robbery. In assessing the *Clark* factors, certain considerations weigh for and against a finding that defendants acted with reckless indifference to human life.

However, " ' "[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient." ' " (*Scoggins, supra*, 9 Cal.5th at p. 677.)

To begin, we note "[t]he intent to commit an armed robbery" or "[t]he mere fact of a defendant's awareness that a gun will be used in the felony is not sufficient to establish reckless indifference to human life." (*People v. Banks, supra*, 61 Cal.4th at p. 799 (*Banks*);

*Clark, supra*, 63 Cal.4th at p. 618.) However, *Clark* acknowledged the presence of a gun is a factor to be considered, and "[a] defendant's use of a firearm, even if the defendant does not kill the victim . . . can be significant to the analysis of reckless indifference to human life." (*Clark*, at p. 618.) Here, defendants were not merely aware an accomplice was carrying a gun or that a gun would be involved in the robbery. (*See, e.g.*, id. at pp. 619-622 [the defendant did not use a gun and did not know any loaded guns would be used in the robbery].) Rather, defendants themselves possessed and used firearms during the robbery. Both Glass and L.V. testified all of the individuals involved in the robbery were wielding firearms.

Defendant Bradley argues the evidence does not indicate he actually expected to use his firearm. But that is not a component of the first inquiry. Rather, the factor assesses "defendant's knowledge of weapons used in the crime, and their actual use and number." (*In re Miller*, supra, 14 Cal.App.5th at p. 975.) Here, it is undisputed that defendants were aware they all had firearms and used them during the attempted robbery.

Other factors supporting a finding of a reckless indifference to human life include defendants' physical presence at the scene and the opportunity to prevent the crime. (*Clark, supra*, 63 Cal.4th at p. 619.) According to *Clark*, "[i]n *Tison*, the high court stressed the importance of presence to culpability." (*Ibid.*) Presence at the location of the killing provides an opportunity to act as a restraining influence. (*Ibid.*) Here, the surveillance video clearly places defendants at the scene, and they do not dispute that they were present during the robbery. They thus were "aware of and willingly involved in the violent manner in which the particular offense [was] committed. . . ." (*See Banks, supra*, 61 Cal.4th at pp. 801, 803, fn. 5.) In response, defendants argue the shooting was an unforeseeable surprise and did not allow defendants to act as restraining influences on the shooter. But in so arguing, defendants focus on an extremely narrow moment in time immediately prior to the shooting. While approaching the vehicle, defendants and Glass observed the public nature of the vehicle-i.e., near the hotel swimming pool where various potential witnesses were present. But they continued with their planned robbery. More importantly, Poblete failed to fully comply when defendants ordered him to raise his hands. Instead, Poblete only raised one hand, indicating to defendants that he may have been hiding something in his other hand. And he was: a gun. But despite his refusal to raise both hands, defendants continued with the planned robbery. And defendants either physically engaged with Poblete by pulling him out of the vehicle or Poblete unilaterally decided to exit the vehicle-both of which suggest the robbery was not progressing as anticipated. But defendants did not flee or alter their plans until after the shooting occurred.

Nor did defendants make any effort to assist the victim following the shooting. (*See Tison, supra*, 481 U.S. at p. 141 [noting the *Tison* brothers' failure to make an effort to help the victims].) While defendants raise a host of reasons to justify their immediate flight, it is undisputed neither Mason nor Bradley attempted to render any degree of aid following the shooting. Moreover, Mason committed

an assault on an individual who attempted to halt his flight, evidencing an ongoing lack of concern for the welfare of others.

The record also does not reflect any effort by defendants to minimize the risk of the robbery. (*See Clark, supra*, 63 Cal.4th at p. 622 ["a defendant's apparent efforts to minimize the risk of violence can be relevant to the reckless indifference to human life analysis"].) Glass testified he and defendants never discussed whether they should bring firearms, whether to keep those firearms unloaded, or how to minimize the likelihood of violence. Furthermore, as noted above, Poblete's truck was parked near a swimming pool where other individuals were present. The jury could reasonably have concluded the public nature of the robbery and presence of others increased the risk of someone being injured.

Undoubtedly, there are some factors that do not evidence a reckless indifference to human life. For example, "[t]he duration of the interaction between victims and perpetrators is ... one consideration in assessing whether a defendant was recklessly indifferent to human life." (*Clark, supra*, 63 Cal.4th at p. 620, 203 Cal.Rptr.3d 407, 372 P.3d 811.) The evidence reflects defendants were on the hotel property, and engaged with the victims, for a short period of time. Thus, the duration of the robbery does not suggest defendants acted with reckless indifference. Similarly, nothing in the record indicates defendants were aware of an accomplice's likelihood of killing. (*Id.* at p. 621, 203 Cal.Rptr.3d 407, 372 P.3d 811.)

We find this case analogous to *People v. Bascomb, supra*, 55 Cal.App.5th 1077, 270 Cal.Rptr.3d 58. There, *Bascomb* and his cohort forced their way into an apartment at gunpoint. (*Id.* at p. 1081, 270 Cal.Rptr.3d 58.) Bascomb held one individual at gunpoint for a few minutes while the cohort entered a bedroom, briefly struggled with the occupant, and shot him. (*Ibid.*) They then fled following the shooting. (*Ibid.*) In assessing whether Bascomb acted with reckless indifference, the court noted: "Bascomb was willingly involved in the violent manner in which the robbery took place.... Bascomb didn't just watch without intervening as his accomplice accosted the murder victim in his bedroom, he used his weapon to keep the other victims at bay and thereby actively enabled the murder. Nor did he help the victim once he had been shot, but instead fled. We agree with the People that this sort of conduct easily meets our state's standard for what constitutes being a major participant who acted with reckless indifference to human life." (*Id.* at p. 1089, 270 Cal.Rptr.3d 58.)

The court also emphasized the importance of a defendant being an active participant who wielded a firearm: "As we said in *People v. Law*, 'we are not aware of a single case that concludes a defendant who personally committed a robbery, used a gun, and was present for the shooting did not meet the standard' of culpability required to support a felony murder conviction. (*People v. Law* (2020) 48 Cal.App.5th 811, 825, 262 Cal.Rptr.3d 268, *review granted* July 8, 2020, S262490.) The defendants who have shown their culpability was too slight under *Banks* and *Clark* 'are those who were not wielding guns themselves and also not present for the shooting (either because they were acting as getaway drivers or because they

were involved in the planning of the crime only).' ([*Law*, at p. 825, 262 Cal.Rptr.3d 268]; *see also, e.g., In re Miller*[, *supra*,] 14 Cal.App.5th [at p.] 965 [222 Cal.Rptr.3d 691] [defendant played the role of 'spotter' who would select the robbery target and was not at the scene of the robbery/murder]; *In re Bennett, supra*, 26 Cal.App.5th at p. 1019 [237 Cal.Rptr.3d 610] [defendant was involved in planning the robbery but was not at the scene of the murder]; [*Taylor, supra*,] 34 Cal.App.5th [at p.] 559 [246 Cal.Rptr.3d 342] [the defendant acted as getaway driver and was not at the scene of the murder].)" (*People v. Bascomb, supra*, 55 Cal.App.5th at p. 1090, 270 Cal.Rptr.3d 58; *accord In re Ramirez* (2019) 32 Cal.App.5th 384, 390, 243 Cal.Rptr.3d 753 (*Ramirez*) [petitioner was waiting across the street with an accomplice's bicycle and was not at the scene of the murder].)

Defendants fail to identify a single case in which a defendant actively participated in a robbery, wielded a firearm during that robbery, and was present for the shooting, but an appellate court found insufficient evidence to support a finding that the defendant acted with reckless indifference for human life. Nor are we aware of any. In considering the *Clark* factors, defendants' culpability is greater than that set forth in those cases on which they rely, namely *Banks*, *Clark*, *Scoggins*, *Taylor*, *In re Bennett*, and *Ramirez*. We conclude the evidence relevant to the *Clark* factors, when considered in total, sufficiently supports the judgment.

> [fn. 4]   Defendants do not dispute they were major participants in the attempted robbery.

> [fn. 5]  *Tison v. Arizona* (1987) 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (*Tison*); *Enmund v. Florida* (1982) 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (*Enmund*).

> [fn. 6]  Senate Bill 1437, which amended the definition of felony murder, incorporated the definitions of "a major participant" and "reckless indifference to human life" from section 190.2, subdivision (d). (*See* § 189, subd. (e); *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1080, 270 Cal.Rptr.3d 58.)

> [fn. 7]   *People v. Clark, supra*, 63 Cal.4th 522, 203 Cal.Rptr.3d 407, 372 P.3d 811 (*Clark*).

Bradley, 65 Cal. App. 5th at 1028-36.

### B.  Legal Standards for Sufficiency of the Evidence Claim

The United States Supreme Court has held that when reviewing a sufficiency of the evidence claim, a court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,

319 (1979).  "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."  Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam).  Moreover, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"  Id. (citing Renico v. Lett, 559 U.S. 766 (2010)).  The Supreme Court cautioned that "[b]ecause rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."  Id.

**C.  Discussion**

Sufficiency of the evidence claims raised in § 2254 proceedings must be measured with reference to substantive requirements as defined by state law.  Jackson, 443 U.S. at 324 n.16.  In the present case, the state court set out the legal standards for felony murder in this case:  the jury had to conclude beyond a reasonable doubt that petitioner intended to commit robbery, was a major participant in the crime, and acted with reckless indifference to human life.  Bradley, 65 Cal. App. 5th at 1029.  Only the reckless indifference determination is at issue here.

The reckless indifference standard has two elements – a subjective element and an objective element.  First, petitioner must have been "'subjectively aware that his or her participation in the felony involved a grave risk of death.'"  People v. Banks, 61 Cal. 4th 788, 807 (2015) (citation omitted); see also In re Scoggins, 9 Cal. 5th 667, 677 (2020) ("As to the subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.'" (quoting Banks, 61 Cal. 4th at 801)).  Second, as to the objective element, "'[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.'"  Scoggins, 9 Cal. 5th at 677.

////

1    In <u>Scoggins</u>, the California Supreme Court listed factors relevant to consideration of

2  reckless indifference:

3       Relevant factors include: Did the defendant use or know that a gun
        would be used during the felony? How many weapons were
4       ultimately used? Was the defendant physically present at the crime?
        Did he or she have the opportunity to restrain the crime or aid the
5       victim? What was the duration of the interaction between the
        perpetrators of the felony and the victims? What was the defendant's
6       knowledge of his or her confederate's propensity for violence or
        likelihood of using lethal force? What efforts did the defendant make
7       to minimize the risks of violence during the felony? [N]o one of these
        considerations is necessary, nor is any one of them necessarily
8       sufficient.

9  <u>Scoggins</u>, 9 Cal. 5th at 677 (internal quotation marks and citations omitted).  In the present case,

10  there was evidence supporting several factors:  (1) petitioner helped plan the robbery by

11  instructing the others how to approach the car; (2) petitioner knew that he, Mason, and Glass had

12  guns; (3) petitioner was physically present at the scene of the planned robbery; (4) petitioner

13  actively participated in it by pointing a gun at the victim; (5) petitioner saw that the victim had a

14  gun; and (6) petitioner was present when the victim was shot.

15    Petitioner's primary argument is that the evidence did not show he and his codefendants

16  anticipated that the victim would draw a gun.  Therefore, he continues, he had no reason to expect

17  the robbery to result in violence.  He also argues that the shooting was not part of a preconceived

18  plan.  Petitioner's definition of reckless indifference is too limited.  He fails to show that no

19  reasonable juror could have found he acted with reckless indifference under the state law

20  standards.

21    Petitioner relies on three cases – <u>Scoggins</u>, <u>Clark</u>, and <u>Banks</u>.  Those cases involved

22  defendants with significantly less participation in the crime than the evidence showed petitioner

23  had here.  In each case, the defendant was involved in planning the robbery but was not at the

24  scene of the crime and was not armed.  <u>Scoggins</u>, 9 Cal. 5th at 677-78 (The defendant understood

25  the robbery would be unarmed, he did not have a gun, and he was not present at the scene.);

26  <u>Clark</u>, 63 Cal. 4th at 618-23 (The defendant was not armed and was not present at the scene

27  where the shooting occurred.); <u>Banks</u>, 61 Cal. 4th at 807-08 (The defendant was an unarmed

28  getaway driver.).  The California Supreme Court's statements that participation in an armed

17

robbery does not, without more, satisfy the deliberate indifference standard were made in the context of cases in which the defendants were neither armed nor present.  Scoggins, 9 Cal. 5th at 677; Clark, 63 Cal. 4th at 618; Banks, 61 Cal. 4th at 799.  It would not be unreasonable to find that being present at the crime and wielding a gun were significant in the "reckless indifference" calculation.  The California Supreme Court in Clark so noted.  Clark, 63 Cal.4th at 618 ("A defendant's use of a firearm, even if the defendant does not kill the victim ..., can be significant to the analysis of reckless indifference to human life.").

Petitioner argues that his presence at the scene is primarily relevant as to whether he had an opportunity to intervene before the victim was shot.  Petitioner argues he did not – the victim pulled a gun and was immediately shot.  However, considering the evidence in the light most favorable to the prosecution, as this court is required to do, it is possible to find petitioner did have that opportunity.  Glass testified that either petitioner or Mason told the victim to raise his hands.  He did not do so, and Glass saw the victim reach for a gun.  The victim was then either pulled from the car or began to step out of it.  In either scenario, the situation changed from the defendants having control over the victims by pointing guns at them to something more complicated and could reasonably be considered more likely to result in violence.  Petitioner and Mason could have fled as soon as the victim failed to raise his hands or began to exit the car.  The evidence could be reasonably interpreted to show that petitioner did not do so.  Rather, he fled only after the victim was shot.

This court also recognizes that the California Supreme Court in Banks focused on the absence of evidence that the defendant knew his co-defendants had a propensity for violence or knew they might encounter armed resistance that could result in the use of violence.  61 Cal. 4th at 811.  That is true in the present case as well.  Respondent points to no evidence that petitioner subjectively knew about a history of or propensity for violence or that the victim might be armed.  Further, under Scoggins, it is not enough that violence "might" have been a result of the crime.  9 Cal. 5th at 677.  Rather, the prosecution must prove petitioner "knowingly create[ed] a grave risk of death."  Id. (internal quotations marks and citations omitted).  That said, this court is not tasked with reevaluating or reweighing the evidence.  Rather, the federal considers only whether the

Court of Appeal's holding is so unreasonable that no rational appellate court could have upheld the jury's verdict.

This court cannot say that the Court of Appeal's reliance on some, but not all, of the Scoggins factors - petitioner's planning, presence, and use of a weapon - was so unreasonable that no rational appellate court could find petitioner knowingly created a grave risk of death. Petitioner's sufficiency of the evidence claim should be denied.

**II. Instructional Error**

In his second claim, petitioner argues that his due process rights were violated by the trial court's refusal to permit an instruction on attempted robbery as a lesser included offense of felony murder.

**A.  Decision of the State Court**

*1. Relevant Background*

Prior to trial, defendant Bradley filed a motion in limine requesting the jury be instructed on robbery and attempted robbery as lesser included offenses of felony murder. Bradley argued the jury may plausibly find that he committed robbery but not find him liable for Poblete's death. The prosecutor objected to the instruction.

The court ultimately declined to give the lesser included instruction. The court explained, historically, attempted robbery was not a lesser included offense to murder, and it was unaware of any authority altering that analysis. While it questioned the fairness of the situation, the court ultimately concluded the district attorney is "the charging body" and "consciously chose to withdraw those charges," and it would "honor [the prosecutor's] objection."

*2. Analysis*

Senate Bill 1437 modified the prior rule that " 'a defendant who intended to commit a specified felony could be convicted of murder for a killing during the felony, or attempted felony, without further examination of his or her mental state.' " (*People v. Cooper, supra*, 54 Cal.App.5th at p. 113, 268 Cal.Rptr.3d 417, rev. granted.) The statutory scheme was amended such that " ' "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)' " (*Ibid.*) Rather, the defendant must have been "the actual killer," "have an intent to kill," or " 'was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' (§ 189, subd. (e)(3).)" (*Ibid.*)

Based on these statutory changes, defendants argue their guilt in an attempted robbery and resulting killing does not automatically make

them guilty of felony murder. Rather, the prosecution must also establish, in this instance, the defendants were "major participant[s] in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e)(3).) Because the attempted robbery and death alone cannot support a felony-murder conviction, defendants argue attempted robbery must be a lesser included offense.

Two tests are used to determine "whether a crime is a lesser included offense of a greater offense: the elements test and the accusatory pleading test. [Citation.] Either of these tests triggers the trial court's duty to instruct on lesser included offenses." (*People v. Gonzalez* (2018) 5 Cal.5th 186, 197, 233 Cal.Rptr.3d 791, 418 P.3d 841.) "Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." ( *People v. Birks* (1998) 19 Cal.4th 108, 117, 77 Cal.Rptr.2d 848, 960 P.2d 1073.) We address each test in turn.[fn 11]

We are unaware of any authority suggesting the elements test would trigger a duty to instruct on robbery based on a felony-murder charge. First degree felony murder, as set forth in section 189, identifies various predicate offenses including "arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or any act punishable under Section 206, 286, 287, 288, or 289, or former Section 288a, or murder that is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death ...." (§ 189, subd. (a).) Because robbery is only one of multiple predicate offenses, it does not satisfy the requirement "that the greater"—i.e., felony murder—"cannot be committed without also committing the lesser"—i.e., robbery. (*See People v. Birks, supra*, 19 Cal.4th at p. 117, 77 Cal.Rptr.2d 848, 960 P.2d 1073.) Felony murder could be committed, for example, based on arson or kidnapping.

Nor does the accusatory pleading test, in this instance, trigger the duty to instruct. The amended information alleges defendants "did commit a felony namely: MURDER, a violation of Section 187[, subdivision] (a) of the Penal Code ... in that said defendants did unlawfully, and with malice aforethought murder ROBBY POBLETE, a human being." Nowhere in the information is robbery mentioned. While robbery undoubtedly constituted the predicate offense for the felony-murder charge, the California Supreme Court has repeatedly held that courts should not look beyond the actual pleading and its allegations regarding the purported greater offense when applying the accusatory pleading test to determine whether one offense is necessarily included in another. (*See, e.g., People v. Banks* (2014) 59 Cal.4th 1113, 1160, 176 Cal.Rptr.3d 185, 331 P.3d 1206 ["When applying the accusatory pleading test, '[t]he trial court need only examine the accusatory pleading.' "], *overruled in part by People v. Scott* (2015) 61 Cal.4th 363, 391, 188 Cal.Rptr.3d 328, 349 P.3d 1028; *People v. Smith* (2013) 57 Cal.4th 232, 244, 159 Cal.Rptr.3d 57, 303 P.3d 368; *People v. Montoya* (2004) 33 Cal.4th 1031, 1036, 16 Cal.Rptr.3d 902, 94 P.3d 1098 ["Consistent with the

primary function of the accusatory pleading test—to determine whether a defendant is entitled to instruction on a lesser uncharged offense—we consider only the pleading for the greater offense."].)

Defendants contend following the accusatory pleading test, without more, would allow the district attorney to artfully plead around what would otherwise constitute lesser included offenses for felony murder. We agree that is a possibility. However, the California Supreme Court recognized the right of prosecutors to craft pleadings to avoid lesser included offenses, albeit in another context. In *People v. Smith, supra,* 57 Cal.4th 232, 159 Cal.Rptr.3d 57, 303 P.3d 368 (*Smith*), the court addressed in part whether resisting a public officer under section 148, subdivision (a)(1) was a lesser included offense to resisting an executive officer in the performance of his duties under section 69. (*Smith*, at p. 236, 159 Cal.Rptr.3d 57, 303 P.3d 368.) The court first concluded the section 148 violation was not a lesser included offense under the statutory elements test because section 69 could be violated in two ways, only one of which overlapped with section 148. (*Smith*, at p. 241, 159 Cal.Rptr.3d 57, 303 P.3d 368.)

In addressing the accusatory pleading test, the Supreme Court explained: "If the accusatory pleading in the present case had charged only the first way of violating section 69 ... [,] section 148[, subdivision] (a)(1) would not have been a necessarily included offense. But the amended information charged defendant with both ways of violating section 69." (*Smith, supra,* 57 Cal.4th at p. 242, 159 Cal.Rptr.3d 57, 303 P.3d 368.) In concluding section 148 was a lesser included offense based on the information as drafted, the court acknowledged the ability of prosecutors to draft pleadings in a manner that would exclude certain lesser offenses: "The prosecution may, of course, choose to file an accusatory pleading that does not allege the commission of a greater offense in a way that necessarily subsumes a lesser offense." (*Smith*, at p. 244, 159 Cal.Rptr.3d 57, 303 P.3d 368.)

Similarly, in *People v. Munoz* (2019) 31 Cal.App.5th 143, 242 Cal.Rptr.3d 314 (*Munoz*), the defendant argued gross vehicular manslaughter while intoxicated should be considered a lesser included offense of murder under the accusatory pleading test. (*Id.* at p. 155, 242 Cal.Rptr.3d 314.) Although the pleading merely repeated the statutory definition of murder and did not set forth the additional requirement for gross vehicular manslaughter while intoxicated, the defendant asserted driving under the influence of alcohol was indisputably the basis for the murder charge. (*Ibid.*) The court agreed driving while intoxicated was a necessary component of the murder charge, but rejected the defendant's argument: "We do not disagree that, based on the preliminary hearing and jury instructions, the prosecution could not secure a murder conviction under the circumstances of this case without proving beyond a reasonable doubt that Munoz drove while intoxicated. The Supreme Court has indicated repeatedly, however, that when applying the accusatory pleading test to determine whether one offense is necessarily included in another, courts do not look to evidence beyond the actual pleading and its allegations regarding the purported greater offense."

(*Id*. at pp. 155–156, 242 Cal.Rptr.3d 314.)

*Munoz* further emphasized the need to restrict the accusatory pleading test to only those allegations in the relevant pleading: "The Supreme Court has explained the importance of limiting analysis of lesser included offenses to the statutory elements and language of the accusatory pleading to 'promote[ ] consistency in application' and 'ease[ ] the burden on both the trial courts and the reviewing courts.' " (*Munoz, supra*, 31 Cal.App.5th at p. 156, 242 Cal.Rptr.3d 314.) *Munoz* rejected application of an "expanded" accusatory pleading test as contrary to Supreme Court precedent. (*Id.* at p. 158, 242 Cal.Rptr.3d 314.)

Here, there are multiple predicate offenses that can form the basis for felony murder, and "[a]n information or indictment need not specify the theory of murder on which the prosecution will rely." (*People v. Gurule* (2002) 28 Cal.4th 557, 629, 123 Cal.Rptr.2d 345, 51 P.3d 224; *accord Smith, supra*, 57 Cal.4th at p. 244, 159 Cal.Rptr.3d 57, 303 P.3d 368 [district attorney may "file an accusatory pleading that does not allege the commission of a greater offense in a way that necessarily subsumes a lesser offense"].) Accordingly, robbery is not a lesser included offense under the accusatory pleading test when the information does not set forth the predicate offense for the felony-murder allegation. The trial court did not err in declining to give the requested instruction on robbery as a lesser included offense.[fn 12]

> [fn 11]  Defendant Mason argues the court has a duty to instruct on relevant principles of law if supported by the evidence. But this position misstates the law. "A trial court has a sua sponte duty to 'instruct on a lesser offense necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser.' " (*People v. Shockley* (2013) 58 Cal.4th 400, 403, 165 Cal.Rptr.3d 497, 314 P.3d 798.) But we need not address the evidence if the lesser offense is not "necessarily included" in the charged offense. And, to make that assessment, we look to the elements test and the accusatory pleading test. (*See People v. Gonzalez, supra*, 5 Cal.5th at p. 197, 233 Cal.Rptr.3d 791, 418 P.3d 841.)

> [fn 12]  Because we conclude the trial court did not err in declining to instruct on robbery as a lesser included offense, we need not address defendants' arguments that the error was prejudicial.

Bradley, 65 Cal. App. 5th at 1036-40.

**B.  Legal Standards for Instructional Error Claim**

A challenge to jury instructions solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings.  See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  The failure of a state trial court to instruct on lesser included offenses in a noncapital case

1    does not present a federal constitutional claim. See Solis v. Garcia, 219 F.3d 922, 929 (9th Cir.

2    2000). However, "the defendant's right to adequate jury instructions on his or her theory of the

3    case might, in some cases, constitute an exception to the general rule." Solis, 219 F.3d at 929

4    (citing Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984) ); see also Cox v. Muniz, No. 17-

5    CV-05723-JD, 2018 WL 4207231, at *3 (N.D. Cal. Sept. 4, 2018). Solis suggests that there must

6    be substantial evidence to warrant the instruction on the lesser included offense. Solis, 219 F.3d

7    929-30 (no duty to instruct on voluntary manslaughter as lesser included offense to murder

8    because evidence presented at trial precluded a heat of passion or imperfect self-defense

9    instruction; no duty to instruct on involuntary manslaughter because evidence presented at trial

10    implied malice).

11          Due process does not require that an instruction be given unless the evidence supports it.

12    See Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005). The defendant is not entitled to

13    have jury instructions raised in his or her precise terms where the given instructions adequately

14    embody the defense theory. United States v. Del Muro, 87 F.3d 1078, 1081 (9th Cir. 1996). To

15    obtain relief for the state court's refusal to give an instruction, the error must so infect the trial

16    that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment. See

17    Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988). In a federal habeas proceeding, the

18    court must further consider whether the state appellate court was unreasonable in its interpretation

19    or application of that standard. 28 U.S.C. § 2254(d).

20        **C. Discussion of Instructional Error Claim**

21          Petitioner argues only the predicate to the due process claim. He contends that robbery

22    and attempted robbery are lesser included offenses of felony murder in this case. That is not a

23    question cognizable on federal review. The Supreme Court has made clear that defining what is

24    or is not a lesser included offense is a question of state law. See Anderson v. Calderon, 232 F.3d

25    1053, 1082 (9th Cir. 2000) (citing Hopkins v. Reeves, 524 U.S. 88, 90-91 (1998)), overruled on

26    other grounds by Bittaker v. Woodford, 331 F.3d 715 (9th Cir. 2003). The state courts are the

27    arbiters of state law. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("[A] state court's

28    interpretation of state law, including one announced on direct appeal of the challenged conviction,

1    binds a federal court sitting in habeas corpus.").  Accordingly, this court must accept the state

2    court's determination in this case that attempted robbery is not a lesser included offense of felony

3    murder under California law.

4         The Supreme Court has further made clear that the Constitution does not require state trial

5    courts to instruct juries on offenses that are not lesser included offenses of the charged crime

6    under state law.  Hopkins, 524 U.S. at 90-91; see also Gonzalez v. Runnels, 395 F. App'x 481,

7    481-82 (9th Cir. 2010) (state court's denial of habeas petitioner's claim "that his due process

8    rights were violated when the trial court declined to instruct the jury on the lesser related offense

9    of grossly negligent discharge of a firearm" was "foreclosed by Hopkins" and "not an

10   unreasonable application of clearly established federal law" because "the state was not required to

11   provide instructions on lesser related offenses").

12        The Court of Appeal decided the state law question that attempted robbery was not a

13   lesser included offense of felony murder.  It did not, and under federal law need not have, ruled

14   on the question of whether the evidence supported a robbery instruction.  The Court of Appeal's

15   denial of petitioner's instructional error claim was not contrary to or an unreasonable application

16   of clearly established federal law.  Petitioner's instructional error claim should be denied.

## CONCLUSION

18        For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's petition

19   for a writ of habeas corpus be denied.

20        These findings and recommendations will be submitted to the United States District Judge

21   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty days after

22   being served with these findings and recommendations, any party may file written objections with

23   the court and serve a copy on all parties. The document should be captioned "Objections to

24   Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be

25   filed and served within seven days after service of the objections.  The parties are advised that

26   failure to file objections within the specified time may result in waiver of the right to appeal the

27   district court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In the objections, the

28   party may address whether a certificate of appealability should issue in the event an appeal of the

24

judgment in this case is filed.  <u>See</u> Rule 11, Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated:  April 4, 2023

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DB Prisoner Inbox/Habeas/S/brad0197.fr